UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

JEFFREY BALDWIN

     Plaintiff,

v.

RICCIARDI, STERN & PATRICKUS, S.C.

     Defendant.

CASE NO. 15-cv-135

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), Defendant, Ricciardi, Stern & Patrickus, S.C. (the "Firm") respectfully asks the Court to dismiss the Complaint of Jeffrey Baldwin ("Plaintiff") in its entirety and with prejudice. Plaintiff contends that the Firm violated various provisions of the Fair Debt Collection Practices Act ("FDCPA") and the Wisconsin Consumer Act by attempting to collect an "inflated" balance. Even though the interest charges were expressly provided for in his contract with the creditor, Plaintiff claims the Firm could not attempt to collect these amounts because he did not receive periodic statements of account, supposedly contrary to the Truth in Lending Act ("TILA") and specifically, its implementing regulations in Code of Federal Regulations, Part 226, known as "Regulation Z."

Plaintiff's claims are without merit for numerous reasons. He does not demonstrate how the Firm violated any provision of the FDCPA independent of its alleged violations of Regulation Z, and Congress did not intend the FDCPA to be a mechanism for enforcing other federal laws like TILA. Plaintiff also cannot establish a TILA violation. Regulation Z only applies to creditors. Moreover, it does not require even creditors to send periodic statements of account in connection with closed-end credit transactions. Even if Plaintiff could surmount these

1

difficulties, moreover, he does not explain how violating disclosure requirements in Regulation Z somehow makes collecting the debt "illegal." Without a viable federal claim, this Court should decline to exercise supplemental jurisdiction over the Wisconsin Consumer Act claim, which in any event would fail for many of the same reasons as the federal claim. Moreover, his claim for punitive damage would fail even if he could prove a violation at trial. In addition to the fact that the Wisconsin Consumer Act does not provide for punitive damages awards, Plaintiff has not alleged conduct that would meet Wisconsin's standards for an award of punitive damages.

## FACTS

The pertinent facts are as stated below.[1] Plaintiff, a Wisconsin resident, contacted the Firm, a Wisconsin business, to request validation of a debt. (Complaint, ¶¶ 6, 7, 10). The Firm responded to that request in its letter of December 16, 2014 (*Id.*, ¶ 11; Affidavit of Mark S. Stern in Support of Defendant's Motion to Dismiss ("Stern Affidavit"), ¶¶ 2-3 & Exhibit A).[2] The response letter provided information regarding a debt owed to the Firm's client, All Credit Lenders. (Stern Affidavit, Exhibit A, p. 1 (cover letter)). It attached a "Consumer Installment

---

[1] The Firm concedes Plaintiff's statements of fact solely for purposes of this motion to dismiss ("Motion"), since the Court must accept Plaintiff's factual allegations as true for purposes of a motion to dismiss where the documents referenced in or relied upon in the Complaint do not contradict those allegations . The Firm reserves the right to contest these allegations in future proceedings in the event the Motion is denied.

[2] The Stern Affidavit attaches Exhibit A, which Attorney Stern identifies as the December 16, 2014 response letter to Plaintiff's validation of debt request. Pursuant to the incorporation-by-reference doctrine, Exhibit A is part of the Complaint and attaching it to the motion does not convert this motion to dismiss into a summary judgment motion. *See*, *e.g.*, *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). "It is well-settled that in deciding a Rule 12(b)(6) motion, a court may consider 'documents attached to a motion to dismiss'" that are "'referred to in the plaintiff's complaint and are central to his claim.'" *Id.* (citation omitted). "In effect, the incorporation-by-reference doctrine provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment." *Id.* The doctrine prevents a plaintiff from evading a Rule 12(b)(6) dismissal by failing to attach to his complaint a document he relies upon that proves his claim has no merit. *See id.*

Loan Agreement" ("Loan Agreement") showing Plaintiff had originally financed $1,500 dollars, at an annual percentage interest rate of 469.01%. (Complaint, ¶ 11; Stern Affidavit, Exhibit A, cover letter and Loan Agreement). At that rate, the daily interest accruing was approximately $19.27: ($1,500 x 4.6901 ÷ 365 = $19.27). The response letter also attached an Amortization Schedule, a summary of Plaintiff's payment history, a copy of a notice of default and right to cure letter, and a calculation of the amount of the debt. (*See generally*, Stern Affidavit, Exhibit A). The pertinent language from the letter reads as follows:

> Per your written request, enclosed please find the following documents in support of Plaintiff's [All Credit Lenders'] claim:
>
> 1. Consumer Installment Loan Agreement
> 2. Amortization Schedule
> 3. Customer's History of Payments
> 4. Right to Cure
> 5. The calculations for the amount the Plaintiff is entitled are as follows:
>
>    a. Interest: daily interest amount: $19.27
>    b. Interest: number of days delinquent 350
>    c. Total interest $6,745.00
>    d. Principal: original amount $1,000.00
>    e. Total amount due: total interest plus writeoffs $8,260.00

(*Id.*, p. 1 (cover letter)).

Plaintiff does not claim in his Complaint that the Firm miscalculated these amounts. (*See generally* Complaint). He does claim he received no periodic statements of account for any period for which interest or fees were charged to the loan account. (Complaint, ¶ 12). He believes the failure to send periodic statement of account reflecting the interest charges was a violation of Regulation Z, specifically Part 226 of the Code of Federal Regulations implementing TILA. (*See* Complaint, ¶¶ 12, 17, 22). Plaintiff concludes the balance was "inflated" based on that failure. According to Plaintiff, attempting to collect the "inflated" balance violated several

3

provisions of the FDCPA, including § 1692f(1), which forbids a debt collector from collecting "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." (Complaint, ¶¶ 15-16). *See* 15 U.S.C. § 1692f(1). He also claims the Firm's attempts to collect the interest constitute harassment in violation of § 427.104(h) of the Wisconsin Consumer Act, which prohibits conduct that can reasonably be expected to harass a customer. (Complaint, ¶¶ 21-22).

## LEGAL STANDARD

While courts accept well-pleaded factual allegations as true for purposes of a motion to dismiss, "mere conclusory statements" will not suffice. *Thulin v. Shopko Stores Operating Co., LLC*, 771 F.3d 994, 997 (7th Cir. 2014) (alteration in original; quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a "complaint must provide sufficient factual information to 'state a claim to relief that is plausible on its face' and 'raise a right to relief above the speculative level.'" *Thulin*, 771 F.3d at 997 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. 678. Allegations contradicted by the documents referenced in the complaint are not accepted as true. *See, e.g., Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit contradicts the allegations in the complaint, ruling against the non-moving party on a motion to dismiss is consistent with our

4

obligation to review all facts in the light most favorable to the non-moving party."). The Court also does not accept as true legal conclusions couched as facts. *Iqbal*, 556 U.S. at 678.

## ARGUMENT

I.  **Plaintiff's FDCPA claim fails.**

   A.  **Plaintiff has no FDCPA claim independent of his claim that the Firm violated Regulation Z.**

Plaintiff's claims are entirely predicated on an underlying violation of TILA and Regulation Z. The FDCPA provisions that the Firm allegedly violated do not purport to require debt collectors to send periodic statements of account to consumers, nor do they purport to prohibit collection of a debt where the consumer has not received the statements. *See Neff v. Capital Acquisitions & Mgmt. Co.*, No. 02 C4434, 238 F. Supp. 2d 986, 988, 993 (N.D. Ill. 2002) (§§ 1692e and 1692f of FDCPA do not impose affirmative disclosure requirements; dismissing claims that defendants violated these provisions by collecting debts where plaintiffs had not received periodic statements of account), *aff'd on other grounds*, 352 F.3d 1118 (7th Cir. 2003). While Plaintiff alleges that § 1692f prohibits a debt collector from collecting amounts not expressly authorized in the agreement creating the debt, the facts are clear that the interest charges the Firm attempted to collect *were* expressly authorized by the Loan Agreement. The Loan Agreement unambiguously provided for interest at an annual percentage rate of 469.01%. The daily interest accruing on a principal amount of $1,500 at that rate is $19.27, which is exactly what the creditor charged him and the firm attempted to collect.

   B.  **Congress did not intend the FDCPA to be a mechanism for enforcing Regulation Z.**

Because Plaintiff's claims cannot stand alone without presupposing a TILA violation, they must fail. Congress did not intend the FDCPA as an enforcement mechanism for other

5

laws, including TILA, and it is inappropriate to construe such violations as FDCPA violations. *See Beler v. Blatt, Haenmiller, Liebsker & Moore, LLC*, 480 F.3d 470 (7th Cir. 2007). The plaintiff in *Beler* alleged that the defendant law firm violated the FDCPA when it served her bank with a citation that caused her account, which contained social security money exempt from collection under the Social Security Act, to be frozen for three weeks. *Id.* at 473-74. She maintained that it was "unfair" or "unconscionable" for purposes of § 1692f of the FDCPA for a debt collector to violate any other rule of positive law, including the Social Security Act and an Illinois law adopting the same rule exempting social security benefits from attachment. *Id.* Affirming summary judgment for the law firm, the Seventh Circuit rejected that reasoning. *Id.* at 472-75. The Seventh Circuit held, "§ 1692f creates its own rules and does not so much as hint at being an enforcement mechanism for other rules of state and federal law. This is not a piggyback jurisdiction clause." *Id.* at 474. "If the Law Firm violated the Social Security Act, *that statute's* rules should be applied. Likewise if the Law Firm violated Illinois law." *Id.*

Other courts in this circuit and elsewhere have applied *Beler*'s reasoning to the TILA context. *See Miller v. NCO Portfolio Mgmt.*, No. 1:09-CV-00616-JMS, 2010 WL 2671910 (S.D. Ind. June 28, 2010); *Large v. LVNV Funding, LLC*, No. 1:09-cv-689, 2010 WL 3069409 (W.D. Mich. Aug. 2, 2010). The district court in *Miller* granted the debt collector's motion to dismiss. *Miller*, 2010 WL 2671910, at *2. The debt collector had purchased a debt from the original creditor and offered to settle the debt by allowing her to roll over her balance to a new credit card. *Id.*, at *1. Plaintiff claimed the debt collector violated TILA by its failure to disclose that it would pay the original creditor only 20% of the original if she chose to settle the debt in that manner. *Id.* She claimed that because the offer was "materially incomplete" under TILA, it was also a material misrepresentation under § 1692e of the FDCPA, which forbids the use of false,

6

deceptive, or misleading representations or means in connection with the collection of a debt. *Id.* The Court held that under *Beler*, it was irrelevant whether the debt collector violated TILA because FDCPA was not an enforcement mechanism for other laws. *Id.* "If Ms. Miller thinks the Defendants violated . . . TILA by not disclosing that information, she should sue under that statute." *Id.*

*Large* was a similar case involving dismissal of a plaintiff's claim that disclosures in connection with settling a debt violated § 1692e because they were noncompliant with TILA and Regulation Z. *See Large*, 2010 WL 3069409, at *1-*2, 6. "The Court is persuaded that the FDCPA is not properly used as an enforcement mechanism for TILA. The Court therefore holds that plaintiff has not stated a claim under the FDCPA by alleging a violation of . . . TILA." *Large*, 2010 WL 3069409, at *5.[3]

### C. Even if the FDCPA were somehow a proper means of enforcing TILA, the Firm did not violate Regulation Z.

Even if the Court somehow concluded it could impose liability under the FDCPA as a means of penalizing violations of other federal laws like Regulation Z, dismissal is proper here. The Firm has not violated Regulation Z. The Firm is not a creditor, periodic statements of account are not necessary for closed-end transactions like the loan at issue, and nothing in Regulation Z prohibits collection of amounts that have not been disclosed in a periodic statement

---

[3] Presumably, Plaintiff attempts to bring claims for violations of TILA and Regulation Z under the ambit of the FDCPA and Wisconsin Consumer Act because any action under TILA and Regulation Z itself would be wholly or partially time-barred. The statute of limitations for bringing a civil action for damages for violations of TILA is "one year from the date of the occurrence of the violation." *See* 15 U.S.C. § 1640(e). The "violation" Plaintiff alleges as a predicate for the FDCPA and Wisconsin Consumer Act claims is that he was charged interest during periods for which he did not receive periodic statements. (The Firm assumes this is a "violation" solely for purposes of the statute of limitations analysis. As the Firm explains below, there was no violation of TILA). To the extent that the creditor charged interest on his loan and failed to send a periodic statement reflecting that charge more than one year before filing the Complaint, the claim would be time-barred.

7

of account.

### 1. The Firm is not a creditor, so Regulation Z does not apply.

Regulation Z, contained in Title 12, Part 226 of the Code of Federal Regulations, contains provisions implementing TILA. *See* 12 C.F.R. § 226.1(a). These provisions apply only to creditors. "In general, [Regulation Z] applies to each individual or business that offers or extends credit." 12 C.F.R. § 226.1(c)(1). There are multiple subparts of Regulation Z that contain disclosure requirements. *See* 12 C.F.R. Part 226 (table of contents), § 226.1(d)(1)-(6) (setting forth organization of Regulation Z). Subpart B contains rules for open-end credit and Subpart C contains rules for closed-end credit. *See* 12 C.F.R. § 226.1(d)(2)-(3). Both only purport to require disclosures from a creditor. *See, e.g.*, 12 C.F.R. §§ 226.5(a)(1)(i)-(ii), (b)(1)(i), (b)(2)(i), & (c)-(d); 226.6(b)(1)-(5), 226.7, 226.8, 226.9, 226.17(a)(1), (b), & (c)(2)(i), 226.18. *See also Neff*, 352 F.3d 1118, 1120 ("Under TILA, only 'creditors' are required to send consumers monthly billing statements.") (dismissing FDCPA claims based on alleged violations of TILA in case involving collection of credit card accounts for lack of a TILA violation).

The Firm is not Plaintiff's creditor. Regulation Z defines "creditor," in relevant part, to mean "[a] person who regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than four installments . . . and to whom the obligation is initially payable"). Plaintiff does not allege that the Firm "offered or extended credit" to him or that the debt was "initially payable" to the Firm. To the contrary, the Loan Agreement and accompanying cover letter in the Firm's December 16, 2014 correspondence to Plaintiff reflect that he entered into a loan transaction with All Credit Lenders, the Firm's client. Additionally, neither the Complaint nor the December 16, 2014 response letter incorporated by reference contains any information that would allow the Court to conclude the Firm *regularly* extends

8

consumer credit.

### 2. Regulation Z does not require creditors to send periodic statements of account in connection with closed-end transactions.

Nothing in Regulation Z required Plaintiff's creditor (presumably All Credit Lenders) to send period statements of account in connection with the transaction since the underlying transaction was a "closed-end credit transaction," as opposed to an open-end credit transaction. Regulation Z defines both terms. "Closed-end credit" means any consumer credit that is not open-end credit. *See* 12 C.F.R. § 226.2(a)(10). Open-end credit means, in relevant part, "a plan in which . . . the creditor reasonably contemplates repeated transactions . . . and . . . the amount of credit that may be extended to the consumer during the term of the plan . . . is generally made available to the extent that any outstanding balance is repaid." *See* 12 C.F.R. § 226.2(a)(20). The transaction in Plaintiff's Loan Agreement was a closed-end credit transaction because it does not possess the features of an open-end credit transaction. The Loan Agreement reflects a one-time extension of credit in the amount of $1,500 and is accompanied by an amortization schedule of installment payments. (*See* Complaint, ¶ 11; *see generally* Stern Affidavit, Exhibit A). Nothing in the Loan Agreement so much as hints that the creditor contemplated additional extensions of credit or repeated transactions or that repayment would affect the amount of available credit.

As noted above, Regulation Z contains separate disclosure requirements for open-end and closed-end credit transactions. Provisions for periodic statements of account appear in Subpart B for open-end credit transactions. *See* 12 C.F.R. §§ 226.1(d)(2), 226.5(a)(2)(v), 226.7. Subpart C for closed-end transactions does not contain such a requirement. *See generally* 12 C.F.R. §§ 226.17-226.24 (Subpart C) & 226.1(d)(3).

9

### 3. Regulation Z does not purport to prohibit collection of a debt where the consumer has not received required disclosures.

Plaintiff's FDCPA claim is flawed for an additional reason. Specifically, it assumes that wherever a creditor fails to make disclosures required in Regulation Z, collection of the debt becomes "illegal." The Firm has already explained above that nothing in the language of the FDCPA supports that conclusion. Nothing in Regulation Z says so either.

## II. The Court must dismiss the Wisconsin Consumer Act claim.

### A. The Court should decline to exercise subject-matter jurisdiction over the Wisconsin Consumer Act claim.

The Court should decline to exercise jurisdiction over the Wisconsin Consumer Act claim, pursuant to 28 U.S.C. § 1367(c)(3), based on Plaintiff's failure to state an FDCPA claim. Section 1367(c)(3) provides that a court may decline supplemental jurisdiction when it has dismissed all claims over which it had original jurisdiction. Here, the only claim over which the Court had original jurisdiction was the baseless FDCPA claim. There is no diversity of citizenship in this case, and the Wisconsin Consumer Act claim is a state law claim that would not give rise to federal question jurisdiction.

In the event that the Court does elect to exercise jurisdiction, however, it should dismiss the claim on the merits and with prejudice for reasons addressed in Part II.B.

### B. Plaintiff fails to state a claim under the Wisconsin Consumer Act.

#### 1. It fails for many of the same reasons the FDCPA claim fails.

Plaintiff's state law claim fails for many of the same reasons as the FDCPA claim. First, it must fail to the extent that it is premised on non-existent violations of TILA and Regulation Z. Second, nothing in the language of Chapter 427 implies that Plaintiff could state a claim in the absence of a TILA violation. As in the case of the FDCPA, it contains no affirmative disclosure

obligations regarding periodic statements or prohibits collection of debts where a customer has not received a periodic statement of account. Third, as in the case of the FDCPA, it contains no hint that the legislature intended it as an enforcement mechanism to punish violations of other laws. Wisconsin courts look to applicable federal law to coordinate their interpretations of the Wisconsin Consumer Act with interpretations of federal debt collection statutes in the FDCPA. *See Brunton v. Nuvell Credit Corp.*, 2010 WI 50, ¶ 45 n.12, 325 Wis. 2d 135, ¶ 45 n.12, 785 N.W.2d 302, ¶ 45 n.12 ("We coordinate our interpretation of the Wisconsin Consumer Act with the Fair Debt Collection Practices Act (FDCPA)."); *Assocs. Fin. Servs. Co. of Wis. v. Hornik*, 114 Wis. 2d 163, 172-73, 336 N.W.2d 395, 400 (1983)).

### 2. Even if Plaintiff could demonstrate a violation of the Act, his Complaint alleges no basis for an award of punitive damages.

In addition to the foregoing reasons, the Court should dismiss the claim to the extent that Plaintiff seeks punitive damages. The Wisconsin Consumer Act does not provide for punitive damages.[4] Moreover, Plaintiff has not alleged the kind of conduct that would give rise to a punitive damages award in Wisconsin.

#### a. Punitive damages are not among a plaintiff's statutorily created remedies for violations of the Act.

Because Plaintiff's claims under the Wisconsin Consumer Act are legislative creations that did not exist at common-law, Plaintiff is limited to whatever remedies the legislature provided for in the statute. Wisconsin law dictates that "when a statute creates a cause of action

---

[4] Wisconsin federal courts within the Seventh Circuit have reached differing conclusions as to whether the Wisconsin Consumer Act provides for punitive damages. *Compare Bruesewitz v. Law Offices of Gerald E. Moore & Assocs., P.C.*, No. 06-C-400-S, 2006 WL 3337361, at *4 (W.D. Wis. Nov. 15, 2006); *Gonzales v. Kohn Law Firm, S.C.*, No. 13-CV-168, 2014 WL 201151, at *1, *3-*6 (E.D. Wis. Jan. 17, 2014) (denying partial judgment on the pleadings for dismissal of non-customer plaintiff's punitive damages claims under Act; presupposing that damages are available to customers). The Firm's analysis is based on the statutory language, consistent with the Western District's holding in *Bruesewitz*.

11

and provides the remedy, the remedy is exclusive." *John Mohr & Sons, Inc. v. Jahnke*, 55 Wis. 2d 402, 412, 198 N.W.2d 363, 368 (1972); *see also Wangen v. Ford Motor Co.*, 97 Wis. 2d 260, 312, 314-15, 294 N.W.2d 437, 463-64, 464-65 (1980) (wrongful death cause of action was not a common-law remedy, the available remedies were those set by statute, which did not include punitive damages). This Court has followed that rule in cases regarding Wisconsin statutory claims. *See Jaeger v. Raymark Industries, Inc.*, 610 F. Supp. 2d 784, 788 (E.D. Wis. 1985) (granting summary judgment dismissing a claim for punitive damages in connection with a wrongful death claim).

Nothing in the Wisconsin Consumer Act purports to affirmatively authorize punitive damages for violations of the Act. Plaintiff alleges that the Firm violated section 427.104 of the Act. Section 427.105, the immediately following section, provides what remedies are available to a "person injured by violation of this chapter." *See* Wis. Stat. § 427.105(1). The remedies provided are actual damages (including emotional distress, if any) and the penalty provided in s. 425.304, which does not include punitive damages. *See* Wis. Stat. § 425.105(1). That's it. The Act does not purport to create any additional remedies for violations of Chapter 427.

Where the legislature intended to affirmatively grant remedies, it knew how to do so. Indeed, the Act contains several provisions expressly setting forth available remedies. *See* Wis. Stat. §§ 425.302(1), 425.303, 425.304, 425.408, and 427.105(1). The only part of the Act that even refers to punitive damages is section 425.301(1), which does not purport to *grant* any remedies but merely states that "[r]ecoveries under chs. 421 through 427 shall not *in themselves preclude* the award of punitive damages in appropriate cases. The most natural reading of that language is that bringing a cause of action for which punitive damages are otherwise available at common-law will not be foreclosed just because Plaintiff has a remedy under the Act. The "in

12

appropriate cases" language reinforces that interpretation. The grant of authority for punitive damages, therefore, must come from an independent source.

Section 425.301(3) bolsters the Firm's conclusion that the Wisconsin Consumer Act does not provide a punitive damages remedy and demonstrates how Plaintiff's interpretation leads to absurd results. That section provides for a bona fide error defense that precludes recovery of statutory penalties in sections 425.302(1), 425.303(1), 425.304(1), and 425.305(1) but does *not* make any reference to remedies in 425.301(1). *See* Wis. Stat. § 425.301(3). It defies reason to believe the legislature intended bona fide error to be a defense against these relatively minor penalties but intended to leave defendants exposed to potentially huge punitive damages awards. The omission of any reference to 425.301(1) and punitive damages makes perfect sense, however, if the Court adopts the Firm's interpretation that section 425.301(1) does not authorize punitive damages for violations of the Wisconsin Consumer Act and instead merely preserves plaintiffs' right to seek punitive damages that are otherwise available in connection with any common-law claims they may assert in the same lawsuit. In other words, plaintiffs will not lose their right to punitive damages on a common-law claim just because they also seek relief under the Act. Plaintiff does not assert any common-law claims that would entitle him to punitive damages.

      **b. Plaintiff has not pled conduct that would support a punitive damages award.**

Even if Plaintiff could find statutory authorization in the Wisconsin Consumer Act for awards of punitive damages, he has not alleged any conduct that would satisfy the standards for punitive damages. In 1995, the Wisconsin legislature enacted Wisconsin Statutes section 895.85 to supersede the common-law standards for punitive damages, which allowed a plaintiff to recover for conduct showing a reckless indifference to or disregard of the rights of others. *See*

13

*Boomsma v. Star Transp., Inc.*, 202 F. Supp. 2d 869, 880-81. (E.D. Wis. 2002). The intent was to make it more difficult for plaintiffs to recover punitive damages. *Id.* at 880. "Wisconsin is now 'among the states having the most stringent punitive damage conduct requirements.'" *Id.* (quoting R. Blatt et al., PUNITIVE DAMAGES 326-27 (2001 Supp.)). The statute, now renumbered as 895.043 provides that "The plaintiff may receive punitive damages *if* evidence is submitted showing that the defendant acted *maliciously* toward the plaintiff or in an *intentional* disregard of the rights of the plaintiff." Wis. Stat. § 895.043(3) (emphases added); *see also Boomsma*, 202 F. Supp. At 880 (quoting same language in predecessor statute).

Plaintiff does not allege any malicious conduct on the Firm's part. Conduct is malicious when it is "the result of hatred, ill will, a desire for revenge, or inflicted under circumstances where insult or injury is intended. There are no allegations that the Firm acted with any such motivation.

Plaintiff also does not allege facts demonstrating that the Firm acted "in an intentional disregard" of his rights. To meet this standard, Plaintiff would have to allege facts showing that the Firm acted "with a purpose to disregard [his] rights" or was "*aware* that such rights were "*aware* that such rights" were "substantially *certain* to result in [his] rights being disregarded. *See Strenke v. Hogner*, 2005 WI 25, ¶ 26, 279 Wis. 2d 52, ¶ 26, 694 N.W.2d 296, ¶ 26 (emphases added) (quoting Wis JI – Civil 1701.7). He must show an act or course of conduct that was deliberate, that the act or conduct actually disregarded his rights, and that the act or conduct was sufficiently aggravated to warrant punishment by punitive damages. *Id.* This Court's decision in *Boomsma* is consistent with *Strenke*. There, the Court noted the importance of a defendant's "*subjective awareness*" that its conduct is "*practically certain*" to result in disregard of someone's rights. *See Boomsma*, 202 F. Supp. 2d at 881; *Strenke*, 279 Wis. 2d 52, ¶

14

51 (clarifying that acts need not be specifically directed at plaintiff). Plaintiff alleges no facts showing that the Firm was "subjectively aware" of any potential violation of his rights, let alone one that was "practically certain" to occur, nor does he allege how the Firm's conduct was aggravated enough to justify punitive damages.

## CONCLUSION

For the foregoing reasons, Plaintiff fails to state a claim upon which relief can be granted, and the Court lacks jurisdiction in any event over his state law claim in the absence of a viable federal cause of action. Accordingly, this Court should dismiss Plaintiff's Complaint in its entirety and with prejudice.

Dated at Milwaukee, Wisconsin this 26th day of February, 2015.

**GUTGLASS, ERICKSON, BONVILLE & LARSON, S.C.**

By: \_/s/ Paul R. Erickson_____
Paul R Erickson, SBN 1003920
paul.erickson@gebsc.com
Joan M. Huffman, SBN 1059029
joan.huffman@gebsc.com
735 N Water St # 1400
Milwaukee, WI 53202-4106
Telephone: (414) 908-0242
Facsimile: (414) 273-3821
Attorneys for Defendant